UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brook Mallak,

            Plaintiff,

v.

Aitkin County; Anoka County; City of
Baxter; City of Brainerd; Cass County;
City of Crosslake; Crow Wing County;
City of Fridley; Hennepin County; City of
Little Falls; City of Long Prairie; City of
Minneapolis; Morrison County; City of
Pine River; Ramsey County; City of St.
Cloud; Scott County; St. Louis County;
City of Staples; Wright County; Tinker &
Larson, Inc.; Michael Campion, acting in
his individual capacity as Commissioner of
the Minnesota Department of Public
Safety; Ramona Dohman, acting in her
individual capacity as Commissioner of the
Minnesota Department of Public Safety;
John and Jane Does (1 - 500) acting in their
individual capacity as supervisors, officers,
deputies, staff, investigators, employees or
agents of the other law-enforcement
agencies or Tinker & Larson, Inc.;
Department of Public Safety Does (1-30)
acting in their individual capacity as
officers, supervisors, staff, employees,
independent contractors or agents of the
Minnesota Department of Public Safety;
and Entity Does (1-50) including cities,
counties, municipalities, and other entities
sited in Minnesota and federal departments
and agencies,

            Defendants.

Civil File No.

**COMPLAINT**

**JURY TRIAL DEMANDED UNDER
F.R.C.P. 38(b)**

For her Complaint, for which she demands trial by jury on all claims so triable,

Plaintiff Brook Mallak ("Mallak" or "Plaintiff") hereby states and alleges as follows:

## INTRODUCTION

This is a case about the reckless abuse of power by numerous law-enforcement

personnel and public employees - those persons who abused the Minnesota Department

of Public Safety's system of maintaining the personal, private information of Minnesota

citizens, and those who knowingly created and maintained this flawed system.  Personnel

from approximately twenty agencies, counties, and cities chose to violate federal law,

Minnesota policy and the constitutionally protected privacy rights of Plaintiff Brook

Mallak.  By casually accessing Mallak's protected driver's license information without

any legitimate purpose, these personnel violated the federal Driver's Privacy Protection

Act ("DPPA") and violated her civil rights under 42 U.S.C. § 1983.  Perhaps more

disturbing, these personnel, charged with protecting and serving the public, knowingly

abused their positions of trust simply to satisfy their shallow desires to peek behind the

curtain into the private life of Mallak – a well-respected attorney in the Brainerd lakes

area.  Even worse, some of these accesses were conducted by various attorneys who

utilized the DVS system as an investigatory tool to look her up while she was opposing

counsel.

Beyond the deliberate disregard of Mallak's rights by various personnel, the

creation, maintenance and protection of the system of guarding Minnesota citizens'

private drivers' license electronic database—containing far more information than ever

before and than even most privacy experts realize—shows an equal indifference to

federal law and Minnesota policy by high-level public officials and administrative departments.  These officials knowingly created a system that is easily and frequently abused.  The State of Minnesota estimates that at least half of all law-enforcement personnel are engaged in this illegal activity.   Rather than design a better system or take reasonable steps to prevent its abuse, these officials have buried their heads in bureaucratic sands, willfully ignoring the widespread, pervasive violation of law by those with access to the system.  Through lax policies and apathetic enforcement of the law, these officials, administrative departments and governmental units have caused direct damage to Mallak, just as they have trampled upon the clear legislative protections of all citizens' right to feel secure in their privacy.

### General Background of Law and Facts

1.      This is an action for injunctive relief and money damages for injuries sustained when personnel in Minnesota illegally viewed Plaintiff Brook Mallak's private, personal, and confidential driver's license information without a legitimate law-enforcement purpose.

2.      These personnel viewed her private information approximately 190 times from 2003 to 2012.

3.      Attached to this Complaint as Exhibit A is a copy of an audit prepared by the Minnesota Department of Public Safety showing the accesses of Mallak's driver's license information made by name, not license plate number, with her driver's license number redacted, and showing the "station," meaning the police department, sheriff's office, or other entity through which the individual accessed her information.

4.     Upon information and belief, these individuals used, disclosed, or otherwise accessed Mallak's private information.

5.     Each unauthorized use, disclosure, or access of her private information, made while acting under color of state and federal law, violated Mallak's federal civil rights and constituted behavior prohibited by federal statute, Minnesota statute, common law, and agency and departmental regulations prohibiting some or all of the conduct engaged in by Defendants in this case.

6.     Mallak brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments of the United States Constitution, 28 U.S.C. §§ 1331 and 1343(a)(3), the Driver's Privacy Protection Act ("DPPA") 18 U.S.C. § 2721 *et seq.*, and Minnesota common law invasion of privacy.

7.     The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

8.     This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.     The amount in controversy exceeds $75,000, excluding interests and costs.

**The Parties**

10.     Mallak is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

11.     Defendant Tinker & Larson, Inc. ("Tinker & Larson") is a Minnesota corporation, with its principal place of business at 124 Northwest Railroad, Mora, Minnesota 55051.

12.     Defendant Aitkin County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

13.     Defendant Anoka County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

14.     Defendant City of Baxter is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

15.     Defendant City of Brainerd is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

16.     Defendant Cass County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

17.     Defendant City of Crosslake is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

18.     Defendant Crow Wing County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

19.     Defendant City of Fridley is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

20.     Defendant Hennepin County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

21.     Defendant City of Little Falls is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

22.     Defendant City of Long Prairie is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

23.     Defendant City of Minneapolis is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

24.     Defendant Morrison County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

25.     Defendant City of Pine River is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

26.     Defendant Ramsey County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

27.     Defendant City of St. Cloud is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

28.     Defendant St. Louis County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

29.     Defendant Scott County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

30.     Defendant City of Staples is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

31.     Defendant Wright County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

32.     All counties and cities listed in paragraphs 12 to 31 are "municipalities" as defined in Minn. Stat. § 466.01, subd. 1, and can be sued under Minn. Stat. § 466.01, *et seq.*

33.    Defendants Entity Does (1-50) are various unknown municipalities as defined by Minn. Stat. § 466.01, subd. 1 that can be sued under Minn. Stat. § 466.01 *et seq.* or other statutes, and federal departments and agencies, which can be sued under 28 U.S.C. § 1346 or other statutes.

34.    Plaintiff will refer to the entities named in paragraphs 11 to 33 above, along with the Entity Does, collectively as the "Defendant Entities" or "Entity Defendants."

35.    Defendants John and Jane Does (1-500), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting in their individual capacities as law-enforcement supervisors, officers or employees of the Defendant Entities or other federal, state, county or municipal entities in Minnesota or employees of Tinker & Larson.

36.    Plaintiff will refer to the individual Defendants (with the exception of the "Commissioner Defendants," "Department of Public Safety Defendants" and "Supervisor Defendants" defined below), including John and Jane Does, collectively as the Individual Defendants" or "Defendant Individuals."

37.    Plaintiff will refer to the Defendants with supervisory authority over the Individual Defendants, including any John and Jane Does with such supervisory authority, collectively as the "Defendant Supervisors" or "Supervisor Defendants."

38.    Defendant Michael Campion ("Campion"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as the Commissioner of the Minnesota Department of Public Safety.

39.     Defendant Ramona Dohman ("Dohman"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota.  Dohman is, and was during part of the relevant time period, duly appointed and as the Commissioner of the Minnesota Department of Public Safety, and is being sued in her individual capacity.

40.     Mallak also seeks prospective relief to bring the actions and procedures of Commissioner Dohman in line with the policy of the State of Minnesota, which is to follow the mandates of the DPPA and to enforce it.

41.     Plaintiff will refer to the Defendants Campion and Dohman collectively, as the "Commissioner Defendants" or "Defendant Commissioners."

42.     Defendants DPS Does (1-30), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting their individual capacities as officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety.

43.     Plaintiff will refer to officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety who created, installed, monitored, regulated, coded, enforced, supervised, maintained, oversaw, updated, or otherwise worked on the Department of Vehicle Services' ("DVS") database or Bureau of Criminal Apprehension ("BCA") database, each of which contained Mallak's private driver's license information (collectively or individually, "DPS Databases" as "Department of Public Safety Does" or "DPS Does.")

## FACTUAL ALLEGATIONS

**I.**     **Mallak is an Attorney in the Brainerd Lakes Area of Minnesota, With Strong Community Ties.**

44.     Mallak is a practicing attorney in Brainerd and Little Falls, Minnesota.

45.     Mallak has long-standing ties within the community going as far back as high school, where she graduated from Little Falls Community High School.

46.     Mallak is a 2002 graduate of the William Mitchell College of Law.

47.     Upon graduating from William Mitchell, Mallak clerked in the chambers of the Honorable Lynn C. Olson of the Anoka County District Court.

48.     From 2003 to 2008, Mallak was a full-time public defender in Crow Wing and Aitkin Counties, representing adult criminal defendants, juvenile delinquents, and parties in child welfare matters.

49.     In 2008, Mallak started her own law firm, which lasted until 2011 when she joined her current firm.

50.     Currently, Mallak is a named partner at the law firm of Gammello, Qualley, Pearson and Mallak, PLLC.

51.     Mallak is well established in the community, as a former board member of the Brainerd Family YMCA, a volunteer with the Junior Achievement of the Upper Midwest and Brainerd Lakes Area Women's Fund, and former president of the Aitkin/Crow Wing County Bar Association.

52.     Previously, she served as the defense attorney for both the Crow Wing County Drug and DWI Courts, was a member of the steering committees for those

Courts, coached the Brainerd High School Mock Trial team, and was an adjunct faculty member at Bemidji State University.

## II.   Mallak's Private Information Accessed Nearly 190 Times Outside the Scope of Any Investigation or Official Police Business.

53.   The Driver and Vehicle Services Division ("DVS") of the DPS maintains a database containing the motor vehicle records of Minnesota drivers. ("DVS Database")

54.   The DVS Database contains "personal information" and "highly restricted personal information," as defined by 18 U.S.C. § 2725 ("Private Data"), including but not limited to names, dates of birth, driver's license numbers, addresses, driver's license photos, weights, heights, social security numbers, various health and disability information, and eye colors of Minnesota drivers.

55.   As early as 2003, Individual Defendants began looking up Mallak's Private Data on the DVS Database.

56.   Employees of Tinker & Larson impermissibly accessed Mallak's Private Data three times.

57.   Officers employed by, licensed by, or otherwise accessing through Aitkin County impermissibly accessed Mallak's Private Data five times.

58.   Officers employed by, licensed by, or otherwise accessing through the Anoka County impermissibly accessed Mallak's Private Data five times.

59.   Officers employed by, licensed by, or otherwise accessing through the City of Baxter impermissibly accessed Mallak's Private Data four times.

60.     Officers employed by, licensed by, or otherwise accessing through the City of Brainerd impermissibly accessed Mallak's Private Data seven times.

61.     Officers employed by, licensed by, or otherwise accessing through the Cass County impermissibly accessed Mallak's Private Data five times.

62.     Officers employed by, licensed by, or otherwise accessing through the City of Crosslake impermissibly accessed Mallak's Private Data two times.

63.     Officers employed by, licensed by, or otherwise accessing through Crow Wing County impermissibly accessed Mallak's Private Data eighty-one (81) times.

64.     Officers employed by, licensed by, or otherwise accessing through the City of Fridley impermissibly accessed Mallak's Private Data two times.

65.     Officers employed by, licensed by, or otherwise accessing through Hennepin County impermissibly accessed Mallak's Private Data once.

66.     Officers employed by, licensed by, or otherwise accessing through the City of Little Falls impermissibly accessed Mallak's Private Data twenty-two (22) times.

67.     Officers employed by, licensed by, or otherwise accessing through the City of Long Prairie impermissibly accessed Mallak's Private Data once.

68.     Officers employed by, licensed by, or otherwise accessing through the City of Minneapolis impermissibly accessed Mallak's Private Data once.

69.     Officers employed by, licensed by, or otherwise accessing through Morrison County impermissibly accessed Mallak's Private Data once.

70.     Officers employed by, licensed by, or otherwise accessing through the City of Pine River impermissibly accessed Mallak's Private Data once.

71.     Officers employed by, licensed by, or otherwise accessing through Ramsey County impermissibly accessed Mallak's Private Data once.

72.     Officers employed by, licensed by, or otherwise accessing through the Scott County impermissibly accessed Mallak's Private Data seven times.

73.     Officers employed by, licensed by, or otherwise accessing through the City of St. Cloud impermissibly accessed Mallak's Private Data once.

74.     Officers employed by, licensed by, or otherwise accessing through the St. Louis County impermissibly accessed Mallak's Private Data once.

75.     Officers employed by, licensed by, or otherwise accessing through the City of Staples impermissibly accessed Mallak's Private Data two times.

76.     Officers employed by, licensed by, or otherwise accessing through Wright County impermissibly accessed Mallak's Private Data once.

77.     All the above accessed were committed knowingly.

78.     Mallak has committed no crimes that would justify any of the above alleged accesses or the accesses cited in the attached Exhibit A.

79.     Individual Defendants viewed Mallak's Private Data from her State-issued driver's license including her home address, color photograph or image, date of birth, eye color, height, weight and driver identification number.

80.     Under the direction of the Commissioner Defendants, DPS and DPS Does, knowingly created the DVS Database that includes Mallak's Private Data and the system for law-enforcement personnel to access to that information.

81.     DPS and DPS Does, under the direction of the Commissioner Defendants, knowingly maintained and updated the DVS Database that included Plaintiff's Private Data.

82.     DPS and DPS Does, under the direction of the Commissioner Defendants, knowingly provided access to the DVS Database that included Plaintiff's Private Data.

83.     DPS and DPS Does, under the direction of the Commissioner Defendants, had the ability to determine that drivers' license information, including Plaintiff's Private Data, was being accessed on multiple occasions, by multiple law-enforcement personnel from multiple law-enforcement agencies.

84.     DPS and DPS Does, under the direction of the Commissioner Defendants, had the ability to prevent unauthorized access to the DVS Database, including unauthorized access to Plaintiff's Private Data.

85.     DPS and DPS Does, under the direction of the Commissioner Defendants, failed to prevent unauthorized access to the DVS Database, including access to Plaintiff's Private Data.

86.     The Commissioner Defendants and DPS Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in the disclosure of Plaintiff's Private Data.

87.     The policy of the State of Minnesota is to uphold the provisions of the law, both state and federal, and to protect and safeguard the privacy rights of the State's citizens and inhabitants, including its drivers' privacy rights, and including those rights as are required to be protected by federal law.

88.     Allowing individuals to access and accessing the DVS Database without a permissible reason is a breach of confidentiality.

89.     In particular, it is the policy of the State of Minnesota, as outlined in Minn. Stat. § 171.12, subd. 7, to comply with the provisions and requirements of the DPPA.

90.     This policy is also set forth in the driver's license application and set forth in statutory language with proper citation to that federal statute.

91.     Defendant Commissioners and DPS Does knowingly disclosed Plaintiff's and others' Private Data and violated state policy by devising and implementing a database, such as the DVS Database, that failed abysmally to uphold the privacy rights of Mallak and others similarly situated as protected by the DPPA.

92.     This failure exposed her information to impermissible and knowing accesses by various persons, including the Defendants in this lawsuit.

93.     This constitutes a knowing disclosure of her information within the meaning of the DPPA.

94.     Defendant Commissioners and DPS Does knowingly devised and implemented a database and a method for using and misusing that database that both permitted and encouraged, through the nature and monitoring of the system, accesses by law-enforcement personnel, state employees, and others that failed to comply with state policy of protecting privacy rights and complying with the DPPA.

95.     The system knowingly devised and implemented by Commissioner Defendants and DPS Does failed to set rules for protecting privacy rights.

96.     This system permitted, and on information and belief still permits, the accessing of the database from personal computers.

97.     This system permitted the giving out of passwords to others.

98.     This system permitted, and on information and belief may still permit, the accessing of the system by persons without any accountability or, in some instances, without the ability to trace the person who made the access.

99.     This system does not require adequate training on the use of the DVS database of sworn-law enforcement officers.

100.     Accordingly, the effective monitoring of the system is difficult, if not impossible, under the system as devised and implemented by Commissioner Defendants and DPS Does, who deliberately emphasized and favored the convenience of the system by users—all at the expense of protecting the privacy rights of the persons in the database.

101.     This deliberate emphasis and preference for convenience to the system users over the privacy rights of the drivers was known to Commissioner Defendants and the DPS Does, and was purposeful.

102.     In failing to properly implement, maintain, and monitor the DVS Database, Commissioner Defendants failed to follow Minnesota state policy.

103.     Many viable methods were and are available to prevent this illegal accessing of private information.

104.     Upon information and belief, the Commissioners and DPS Does knew that law-enforcement officers were accessing the databases for impermissible purposes.

105.    Upon information and belief, the Commissioners and DPS Does knew that law-enforcement officers were viewing Plaintiff's Private Data.

106.    Upon information and belief, the Commissioners and DPS Does knew that at least 50% of the law enforcement personnel of the various law enforcement agencies, including the Maple Grove Police Department during Dohman's tenure there as police chief, were impermissibly accessing the driver's license data of Minnesota drivers and others with Minnesota identification cards on a regular basis.

107.    The information contained in the DPS database is far greater and contains more private personal information than is customarily known to non-law enforcement personnel, and includes the social security numbers of the drivers, as well as health information.

108.    Minnesota Administrative Rules § 7410.2610 requires disclosure of diabetic information by a driver.

109.    Minnesota Administrative Rules § 7410.2500 requires disclosure of a driver's history of seizures.

110.    Minnesota Statute § 171.13 allow for a records of "other physical or mental examinations" for the purpose of driver's license application.

111.    Information provided pursuant to Minn. Admin. Rules §§ 7310.2610 and 2500, and Minn. Stat. § 171.13 are disclosed in confidence to the DPS.

112.    Information provided pursuant to Minn. Admin. Rules §§ 7310.2610 and 2500, and Minn. Stat. § 171.13 are some of the most intimate aspects of human affairs.

113.    These accesses are committed surreptiously, and without the knowledge of the victims, including Mallak, which knowledge is kept hidden and concealed from the victims, including Mallak.

114.    Until recently, the policy of the DPS was to restrict the ability of the driver to find out who had accessed his or her driver's license information; the policy is still to prevent the driver from finding out who actually accessed that information; a recent bill before the Minnesota Legislature would have required the DPS to notify the victims if their information had been impermissibly accessed by law enforcement personnel, but that bill failed to pass in the 2013 Legislative Session.

115.    There has not been a single instance of which Mallak is aware involving her or anyone else where an officer has informed her that he or she has accessed her information.

116.    The secretive, surreptitious, concealed, and hidden nature of these accesses is kept secret from the general public and from the victims, including Mallak, but is well known throughout the law-enforcement community, from top ranking to the lowest ranking officers.

117.    Upon information and belief, the Commissioners and DPS Does acquiesced, facilitated, approved or simply ignored the conduct.

118.    Even if the Commissioners and DPS Does had no actual knowledge of the impermissible uses of the databases they oversaw, upon information and belief, they were reckless in their supervision of their subordinates who did operate the database.

119.    Upon information and belief, the Commissioners and DPS Does were grossly negligent in supervising their subordinates who operated the databases.

120.    In March 2013, Mallak began having suspicions that law-enforcement officers were inappropriately accessing her information.

121.    Mallak contacted DPS to inquire whether law-enforcement officers had been viewing her private information.

122.    On March 19, 2013, she was shocked and disgusted to learn from DPS that it had determined that personnel accessed her information approximately 189 times since 2003.

123.    Before receiving this audit report, Mallak had no knowledge that her Private Data had been accessed through the DVS Database, nor could she reasonably be expected to have discovered this abuse.

124.    Learning of this massive invasion of her privacy made Mallak feel victimized, nervous, angry, anxious, nauseated, and feared for her safety when alone.

125.    Mallak was particularly disgusted and appalled when she discovered that many of the accesses were done by people from entities that she had worked closely with in her position as a public defender and private attorney.

126.    Upon information and belief, many of the accesses were conducted by individuals who were opposing counsel and that the accesses were done to investigate Mallak as opposing counsel, which is not permissible under the DPPA.

127.    Mallak believes that even more unauthorized accesses and viewings will occur in the future if the policies of Entity Defendants and other police departments and

law-enforcement agencies similarly situated are not changed to bring the actual custom and practice of these Entity Defendants and others similarly situated into compliance with their own written rules, with the rules of the Department of Public Safety, and with federal law, including the DPPA.

128.    Included in the audits were personnel associated with the Defendant Entities.

129.    According to DPS, Individual Defendants used Mallak's name, not her license plate number, to look up her private, personal information.

130.    Individual Defendants' identities (John and Jane Does) are not presently known, and cannot be revealed pursuant to the Minnesota Government Data Practices Act.  Plaintiff anticipates that these yet-to-be-named Individual Defendants will become known through discovery.

131.    Supervisor Defendants are not presently known.  Plaintiff anticipates that the yet-to-be-named Supervisor Defendants who should have monitored, prevented and stopped the unauthorized access to Mallak's information will become known through discovery.

132.    The remaining Entity Defendant identities (Entity Does) are not presently known, because not all of the entities identified by the DPS have provided sufficient information to determine if their law-enforcement personnel's access to the database was unauthorized.  Plaintiff anticipates that these yet-to-be-named Entity Defendants will become known through discovery.

133.    At the relevant times for this lawsuit, the login page to the DVS website included the following admonition, or a similar admonition:

>    Access to this service is for authorized personnel only conducting official business.  If you do not have the express authorization, you must exit now or face the consequences of violating Chapter 13 of the Minnesota Statutes and other laws.  Further, the State of Minnesota prohibits unauthorized access, disclosure, duplication, modification, diversion, destruction, loss, misuse, or theft of its information in accordance with the Minnesota Statutes Sections 609.87 – 609.891.
>
>    DVS collects and maintains electronic access data.  This data may be used and disseminated for the purpose of evaluating electronic government services; to prevent unlawful intrusions into government electronic systems; or as otherwise provided by law.

134.    On information and belief, Individual Defendants' training included admonitions against viewing Private Data for unofficial purposes.

135.    Whatever training, monitoring, or inquiry into the officers' and employees' usage of the information systems has been adopted is woefully inadequate to ensure that access is used properly and lawfully.

136.    On information and belief, despite this training, Defendant Entities and Defendant Supervisors, allowed their employees, including but not limited to Individual Defendants, to view Plaintiff's Private Data for unlawful purposes.

137.    On information and belief, Defendant Entities, Defendant Supervisors, Commissioner Defendants and DPS Does permitted, condoned, or acquiesced in this illegal access to Plaintiff's private information, and knew or should have known that it was occurring.

138.    On information and belief, this illegal access occurs with regularity not only of Plaintiff's private information, but of other Minnesota drivers' private information.

139.    Defendant Entities, Defendant Supervisors, Defendant Commissioners and DPS Does have lax policies or lax enforcement of these policies that allow for these intrusions.

140.    Defendant Entities, Defendant Supervisors, Defendant Commissioners and DPS Does either have no viable method of or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their officers.

141.    The extent of this illegal access is widespread and pervasive throughout departments, and is a custom and practice.

142.    The widespread practice is demonstrated by the systematic tolerance of illegal accesses.

143.    Further evidence of the custom and practice can be found in actual statements made by current officers, one of whom was quoted in a magazine article about the illegal access into previous cases involving this same breach of privacy as saying that "every single cop in the state has done this.  Chiefs on down."

144.    Further evidence is based on actual statements made by former officers, one of whom was quoted in a magazine article about illegal accesses of other individuals as saying that "[y]ou used to look up people without a second thought.  You'd look up old friends from high school or just someone you used to know."

145.    Each law-enforcement personnel has a password allowing that individual access to the DPS Database.

146.    Law-enforcement personnel can access the DPS Databases from any computer with internet access.

147.    Officers occasionally gave other individuals their passwords, contrary to requirements.

148.    The system for accessing accountability and responsibility was and is prone to error and fails to protect drivers' private information.

149.    On further information and belief, this illegal access of Private Data occurs disproportionately to women.

150.    When Defendants' personnel viewed Mallak's private information, they did not do so to carry out official police functions.

151.    Mallak committed no crimes that would authorize the unauthorized access of her private driver's license information.

152.    The Individual Defendants obtained Mallak's personal information without probable cause or reasonable suspicion to believe that Mallak had engaged in any criminal activity or any activity even remotely related to criminal activity.

153.    Mallak never waived the protections of the DPPA.

154.    Defendants' actions have violated the United States Constitution, the DPPA, 42 U.S.C. § 1983 and Minnesota State law.

**III.    The Commissioner Defendants Have Known About DPPA Violations**

155.    DPS Commissioners Campion and Dohman have been involved with law enforcement for many years.

156.    Commissioner Dohman has been a law enforcement officer for thirty years, having formerly served as police chief of the City of Maple Grove from 2001 until her appointment as DPS Commissioner in March 2011.

157.    Before becoming Chief of Police of the Maple Grove Police Department, Dohman was an investigator, patrol officer, sergeant and captain of the Maple Grove Police Department; and prior to that time, she was a patrol officer of the City of Glencoe and of the City of Marshall, Minnesota.

158.    Dohman also served as president of the Minnesota Chiefs of Police Association.

159.    Michael Campion served as DPS Commissioner from July 2004 until March 2011.  Prior to his appointment as DPS Commissioner he was supervisor of the Bureau of Criminal Apprehension ("BCA"), which also maintains a driver's license database.

160.    Prior to that position, Campion was a special agent at the BCA.

161.    It was during Campion's tenure that the DPS database was largely developed in its current format.

162.    On information and belief, misuse of the DPS database has been well-known to Commissioner Defendants.  At a hearing in February 2013, before the Evaluation Subcommittee of the Legislative Audit Commission, comprised of three

members from each the Minnesota Senate and the Minnesota House of Representatives, only three people testified:  the Legislative Auditor Jim Nobles, his assistant and Commissioner Dohman.  The testimony of the Legislative Auditor revealed that at least 50% of law-enforcement officers are misusing the DPS database by accessing, disclosing, and/or using the driver license personal information for an impermissible purpose.  The testimony of Commissioner Dohman failed to offer any excuse for this rampant failure or to address her knowledge of this widespread and pervasive failure and refusal to follow and abide by the criminal and civil requirements of the DPPA.

163.    Commissioner Dohman's practices and procedures that result in knowing disclosure of the private information are directly contrary to the policy of the State of Minnesota.

164.    Commissioner Dohman has been unresponsive to the need to protect this information until the Legislative Auditor's report focused public attention on the matter, requiring some response.

165.    On information and belief, Commissioner Defendants knew of the widespread misuse of the system and knowingly disclosed the private information in part by (a) failing to safeguard and monitor the database despite knowing of its rampant misuse, (b) willfully refusing to correct the misuses, or (c) both failing to monitor and refusing to correct the abuse and misuse of the system.

166.    The Driver's License application assures Minnesota drivers their information will be safeguarded and kept private, and the failure at all levels of the DPS

and law enforcement to keep this information private is a flagrant breach of a promise of confidentiality.

167.    Experts in the field of police training report that the primary complaint of many police departments is that law-enforcement personnel misuse private information. This is an established, well-known, and pervasive problem with law enforcement that Commissioner Defendants are unwilling to properly address.

**IV.    Mallak Has Been Harmed By This Intrusion Into Her Private Life.**

168.    The sheer volume of the intrusions into her private life demonstrates that law-enforcement personnel are unfairly hostile and careless toward Mallak's privacy and safety.

169.    The fact that several personnel from various County Attorney's offices accessed Mallak's Private Data is particularly disturbing.  These personnel may have tried to use this private information about Mallak to gain an advantage in cases where she was opposed to them.

170.    As a result of these invasions of privacy, Mallak feels she has lost any control over the privacy in her life.

171.    As a result of these invasions of privacy, Mallak has suffered severe emotional distress and interruption of her work.

<u>**COUNT I: VIOLATION OF THE DPPA, 18 U.S.C. § 2721, *et seq.***</u>

*(Against all Defendants)*

172.    Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 171 as though fully set forth in this Paragraph 172.

173.    Mallak provided personal information to the DPS including her address, color photograph, social security number, date of birth, weight, height and eye color for the purpose of acquiring and utilizing a State of Minnesota driver's license.

174.    The DPS Database also maintained Mallak's driving record.

175.    Mallak did not provide her consent for any of Defendant Individuals to obtain, disclose or use, or for any of Defendant Entities or Defendant Supervisors to disclose or to allow Defendant Individuals to obtain, disclose or use, her private information for anything but official law-enforcement business.

176.    Intentionally obtaining, disclosing or using Private Data without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

177.    The DPPA provides redress for violations of a person's protected interest in the privacy of her motor-vehicle records and the identifying information therein.

178.    Minnesota law is to enforce and follow the DPPA and to hold all information obtained pursuant to an application for a driver's license confidential and private; even prior to the passage of the DPPA in 1994 Minnesota law pledged to hold all this information private and confidential, and on one's driver's license application these promises of confidentiality are all made; Defendants' actions in accessing and disclosing this information is a flagrant breach of that pledge of confidentiality.

179.    Each of the Defendants has invaded Mallak's legally protected interest under the DPPA.

180.    Defendant Commissioners or the employees they supervised knowingly disclosed Mallak's private personal information from her driver's license for purposes not permitted under the DPPA.

181.    The Individual Defendants knowingly obtained, disclosed or used Mallak's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA.  18 U.S.C. § 2724(a).

182.    None of the Individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Mallak's private information.

183.    By the actions described above, each Defendant Individual was acting within the scope of his or her employment when he or she obtained, disclosed or used Mallak's personal information from the DPS Databases for an impermissible purpose.

184.    Individual Defendants knew that their actions related to Mallak's Private Data were in violation of the DPPA.

185.    Defendant Entities, Defendant Supervisors, Defendant Commissioners and DPS Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Mallak's private personal information by Individual Defendants.

186.    Their actions, particularly those of the DPS Commissioners Campion and Dohman, constitute knowing disclosures of the personal information of Plaintiff and others under the DPPA.

187.    The actions alleged herein show that DPS Commissioners Campion and Dohman knowingly disclosed the information by granting the Defendant Individuals

access, violating the DPPA, even if they did not know that the Defendant Individuals accessed and obtained the information for an impermissible purpose.

188.   Individual Defendants knowingly used Defendant Entities' computers, passwords and passcodes to access Mallak's private information.

189.   The sheer volume of personnel that obtained, disclosed or used Mallak's private personal information makes apparent that Defendants' use was not permissible.

190.   Defendant Entities are each vicariously liable for the acts of Defendant Individuals.

191.   Individual Defendants used the Entity Defendants' computers, passwords, and passcodes to obtain Mallak's private information.

192.   By the actions complained of, Commissioner Defendants and DPS Does are jointly liable for the acts of Defendant Individuals.

193.   Mallak has suffered harm because her private information has been obtained and viewed unlawfully.

194.   Mallak suffered and continues to suffer harm by virtue of the increased risk that her protected information is in the possession of numerous law-enforcement personnel who obtained it without a legitimate purpose.

195.   Mallak has further suffered harm because her private information has been obtained unlawfully.  Mallak suffered and continues to suffer harm by virtue of the increased risk that their protected information is in the possession of Individual Defendants who obtained it without a legitimate purpose.

196.    This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

197.    Individual Defendants, Supervisor Defendants, Commissioner Defendants, and DPS Does each willfully and recklessly disregarded the law, entitling Mallak to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. section 549.20.  Plaintiff is entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

198.    In addition, under the DPPA, Plaintiff is entitled to a baseline liquidated damages award of at least $2,500 for each violation of the DPPA.  18 U.S.C. § 2721(b)(1).  Mallak need not prove actual damages to receive said liquidated damages.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983

*(Against Individual Defendants Including John and Jane Does except the employee(s) of Tinker & Larson)*

199.    Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 198 as though fully set forth in this Paragraph 199.

200.    The Fourth Amendment to the Constitution of the United States provides for the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

201.    The Fourth Amendment to the Constitution of the United States establishes a well-settled civil right to be free from an unconstitutional search.

202.    At no time did Mallak behave in a manner that would provide any legal justification for the above-described invasion of her privacy.

203.    The DPPA establishes that obtaining an individual's Private Data without a legitimate purpose constitutes an illegal search under the meaning of the Fourth Amendment, as well as a violation of her substantive due process right to privacy under the Fourteenth Amendment.

204.    The DPPA, among other things, such as the plain language of the Constitution, the various court decisions interpreting the Constitution, and the traditions of our country establish that an individual has a reasonable expectation of privacy in their driver's license information.

205.    Individual Defendants' viewing of Mallak's personal information was unauthorized, unjustified, and excessive, and violates the Fourth and Fourteenth Amendment, the laws of the United States and the laws of the State of Minnesota.

206.    By the actions described above, each Individual Defendant law-enforcement personnel, acting under color of state and federal law, violated and deprived Mallak of her Fourth and Fourteenth Amendment Rights.

207.    The acts of each Defendant Law-Enforcement Personnel, acting under the color of state and federal law, constituted an invasion or repeated invasions of Mallak's clearly-established privacy rights, guaranteed by the Bill of Rights and the Fourteenth Amendment to the United States Constitution, the laws of the United States, including the DPPA, and the laws of the State of Minnesota.

208.     The DPPA protects and codifies an individual right to privacy in a person's Private Data, thereby prohibiting unauthorized accessing of all persons' information, including Mallak's information.

209.     Each individual law-enforcement personnel, acting under color of state and federal law, knew that his or her actions violated and deprived Mallak of her clearly established statutory rights under the DPPA.

210.     Each Individual Defendant law-enforcement personnel deprived Mallak of her federal statutory rights and civil rights maliciously or by acting with reckless disregard for whether Mallak's rights would be violated by his or her actions.

211.     Each Individual Defendant law-enforcement personnel was deliberately indifferent to Mallak's statutory and civil right to be free from illegal searches, invasions of privacy and the unauthorized accessing of her Private Data.

212.     As a direct and proximate result of the acts and omissions of the above-named Individual Defendants, Mallak endured mental suffering, and was damaged in an amount yet to determined, but believed to be well in excess of Five Hundred Thousand ($500,000) Dollars.

213.     Punitive damages are available against Individual Defendant law-enforcement personnel for their reckless and callous disregard for Mallak's rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirement for punitive damages set forth in Minn. Stat. § 549.20.

214.    Plaintiff is entitled to recovery of her costs, including reasonable attorney

fees, under 42 U.S.C. § 1988.

## COUNT III: VIOLATION OF 42 U.S.C. § 1983

*(Against Entity Defendants and Supervisor Defendants, including John, Jane and Entity*
*Does except Tinker & Larson)*

215.    Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 214

as though fully set forth in this Paragraph 215.

216.    Individual Defendants' numerous accesses of Mallak's private information

are not unique, but one example of how frequently such law-enforcement agencies

customarily violate the DPPA by accessing Private Data of persons without having any

legitimate or permissible reason for doing so.

217.    Persons familiar with police departments and those involved in teaching

supervisors how to train and hold accountable their subordinate law-enforcement

personnel have been told by those supervisors that the unlawful and impermissible

accessing of private information is among the most frequently committed wrongs by

police, for which they are seldom if ever held accountable.

218.    The foregoing information, other information to be presented at trial, and

evidence reasonably likely to be determined after full discovery demonstrate that the

improper access of citizens' Private Data by Defendants for their own personal and

private uses, obtained by accessing that information through the computerized

information storage system kept by the State for official purposes only, is an official

custom or practice well known to Defendant Supervisors and Commissioner Defendants.

219.    These customs and practices by Defendant Individuals are at variance with the written rules set down by the Entity Defendants and Commissioner Defendants, but these formal rules are widely and knowingly disregarded.

220.    Given Entity Defendants' failure to monitor and enforce their rules, the aforementioned customs and practices are attributable to the municipalities themselves, including the Entity Defendants herein.

221.    Defendant Entities and Defendant Supervisors of the law-enforcement personnel accessing this information knew or should have known of this and other unlawful, improper, unjustified, and impermissible access to private information by law-enforcement personnel.

222.    The prevalence of this custom, the lack of monitoring regarding these access practices and the failure to take action to stop or prevent these practices, demonstrate the state of mind of Defendant Supervisors and municipal officials of the Entity Defendants.

223.    These customs and practices further demonstrate Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including Plaintiff, whose information has been wrongfully accessed.

224.    Defendant Entities are directly liable for the custom and practice of the widespread illegal access of citizens' Private Data.

225.    Supervisor Defendants, up to and including the chief police officers, sheriffs, or attorneys employed by each Entity Defendant, are liable in their individual capacity.

226.    Defendants' liability is due to their actual and constructive knowledge of this practice.

227.    Defendants' liability is also due to their failure to institute any process for monitoring and preventing it.

228.    Defendants' liability is also due to their deliberate indifference to the federal rights of those persons, including Plaintiff, whose information has been and continues to be wrongfully accessed.

229.    In addition, Defendant Supervisors of personnel, up to and including the chief police officer, sheriff, or attorneys in each of Defendant Entities, are liable in their individual capacities for the failure to train, monitor, supervise, and properly discipline the officers who are improperly and unlawfully accessing the Private Data of citizens, including Plaintiff, without a proper, lawful, permissible, justifiable purpose for doing so.

230.    This pattern of failure to train, monitor, supervise, and discipline demonstrates the state of mind of these Defendant Supervisors and a deliberate indifference to the rights of the citizens and others whose information has been so widely accessed, including Plaintiff.

231.    The federal rights of the citizens, including Plaintiff, whose information is improperly accessed, are held in light regard by many if not most of the Defendant Supervisors and by the Defendant Entities themselves.

232.    Defendants' lack of concern evidences their deliberate indifference both to the problem of the unauthorized access and to the impact of the unauthorized access on

the federal rights of the citizens, including Plaintiff, who would often be unaware of that access.

233.    It is yet unknown whether a system has been established by the Entity Defendants and Supervisor Defendants to monitor the regular access of the DPS Databases by personnel.

234.    It is yet unknown whether any attempt has been made by Entity Defendants and Supervisor Defendants to provide redress and assurance to the persons, including Plaintiff, whose DVS information has been wrongfully accessed by the Individual Defendants named in this Complaint, or by other officers in the municipalities named in this Complaint.

235.    As a direct and proximate result of the acts and omissions of the above-named Defendant Entities and Defendant Supervisors, Mallak has endured and continues to endure mental suffering, and has been damaged in an amount yet to determined and of a continuing nature, but believed to be well in excess of Five Hundred Thousand ($500,000) Dollars.

236.    Punitive damages are available against Defendant Supervisors for their reckless and callous disregard for Mallak's rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

237.    Plaintiff is entitled to recovery of her costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1983

*(Against Commissioner Defendants and DPS Does)*

238.    Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 237 as though fully set forth in this Paragraph 238.

239.    As DPS Commissioners, Campion and Dohman, along with DPS Does, were and are responsible for creating, maintaining, and providing access to the database that included Plaintiff's Private Data.

240.    Defendant Commissioners and DPS Does also had the ability to determine if unauthorized access was being made and to prevent such unauthorized access to the database, including of Plaintiff's Private Data, and have the ongoing duty to prevent such unauthorized accesses.

241.    Commissioner Defendants and DPS Does failed to prevent unauthorized access to the database, including Plaintiff's Private Data.

242.    The actions of Commissioner Defendants and DPS Does, as alleged, violate the rights of the Plaintiff under the Fourth and Fourteenth Amendments to the United States Constitution and under the DPPA.

243.    On information and belief, Commissioner Defendants and DPS Does created or oversaw the creation and maintenance of a database and system that was supposed to prevent unauthorized access to Private Data.

244.    From 2003, Commissioner Defendants and DPS Does allowed unauthorized access of Mallak's Private Data such that Mallak's information was accessed approximately 190 times.

245.    On information and belief, Commissioner Defendants' and DPS Does' efforts have been insufficient to prevent future unauthorized access of Plaintiff's and other individuals' private, personal information.

246.    Commissioner Defendants and DPS Does have sanctioned the constitutional violations by the Individual Defendants through their failure to remedy the policy, custom and practice of officers' and employees' unfettered and unauthorized access to the database.

247.    Commissioner Defendants and DPS Does have been grossly negligent in supervising subordinates responsible for implementing a law-enforcement database that prevents unauthorized access to private, personal information.

248.    On information and belief, Commissioner Defendants and DPS Does failed to monitor and prevent unauthorized access to private, personal information even though they knew or should have known that such unconstitutional acts were occurring.

249.    Commissioner Defendants and DPS Does, acting under the color of state and federal law, were deliberately indifferent to Mallak's constitutionally-recognized and federal statutory rights to be free from illegal searches, invasions of privacy and the unauthorized accessing of her Private Data.

250.    Commissioner Defendants and DPS Does failed to implement properly Minnesota's policy to protect the private, personal information of its citizens with drivers' licenses.

251.    Commissioner Defendants and DPS Does are jointly liable for the use, disclosure, or access of Mallak's Private Data for each Individual Defendants' access.

252.    As a direct and proximate result of the acts and omissions of Commissioner Defendants and DPS Does, Mallak was forced to endure mental suffering, and was thereby damaged in an amount yet to determined, but believed to be well in excess of Five Hundred Thousand ($500,000) Dollars.

253.    Punitive damages are available against Commissioner Defendants and DPS Does for their reckless and callous disregard for Mallak's rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

254.    Plaintiff is entitled to recovery of her costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT V – VIOLATION OF 42 U.S.C. § 1983

### *(Against DPS Commissioner Dohman - Prospective Relief)*

255.    Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 254 as though fully set forth in this Paragraph 255.

256.    Defendants' misconduct reflects a custom and/or policy of sanctioning, permitting, encouraging, provoking, and/or allowing invasions of citizens' DPPA privacy rights that operated throughout DPS, all in violation of state policy to protect its citizens' Private Data and to enforce the DPPA and to uphold constitutionally-guaranteed privacy protections.

257. The acts and omissions of Defendant Dohman were the direct cause of the custom or policy permitting violations of citizens' DPPA privacy rights that operated throughout the DPS.

258. Not only were the violations of privacy rights tolerated, but the persons who were in charge of overseeing compliance with the DPPA instead obstructed the efforts of persons who sought audits or other information regarding the violations, again in violation of state policy requiring the enforcement of the DPPA and requiring openness and transparency in government, and guaranteeing the rights of citizens to information such as these violations.

259. The lack of monitoring regarding records acquisition practices and the failure to take action to stop or prevent these practices demonstrate the state of mind of Commissioner Dohman.

260. These customs and practices further demonstrate Dohman's deliberate indifference to the federal statutory and constitutional rights of citizens, including Mallak's, whose information was unlawfully obtained, used, collected, stored, disclosed and disseminated.

261. As a direct and proximate result of the acts and omissions of the DPS Commissioner, prospective injunctive relief is warranted permanently enjoining the DPS Commissioner from allowing the unfettered and unauthorized access by its employees to view private information in violation of federal law and further requiring her and/or her successors to set in place policies, procedures and/or practices prohibiting the unlawful

accessing, viewing, collecting, storing, disclosing and disseminating of private data in the future, as well as a mechanism to audit or monitor compliance with these procedures.

262. Plaintiff is entitled to recover their costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## COUNT VI: COMMON LAW INVASION OF PRIVACY

*(Against All Defendants)*

263. Plaintiff reaffirms and realleges the allegations in Paragraphs 1 through 262 as though fully set forth in this Paragraph 263.

264. By improperly obtaining Mallak's private personal information for impermissible reasons, Defendants intentionally intruded upon the solitude or seclusion of Mallak's private affairs and concerns.

265. Defendants' intrusion would be highly offensive to a reasonable person.

266. Defendants' intrusion caused Mallak to suffer severe emotional distress and physical harm.

267. Defendants' intrusion was intended to cause Mallak to suffer severe emotional distress and physical harm, and was made with either actual or legal malice, or with reckless disregard of her rights and her privacy.

268. Plaintiff is entitled to tort damages for Defendants' invasion of privacy.

## JURY DEMAND

269. Plaintiff demands a jury trial as to all issues of fact herein properly triable to a jury under any statute or under common law.

WHEREFORE, Plaintiff Brook Mallak prays for judgment against the Defendants as follows:

1.      A money judgment against all Defendants for liquidated, actual and compensatory damages in an amount in excess of Five Hundred Thousand ($500,000) Dollars and punitive damages in an amount to be determined by the jury, together with her costs, including reasonable attorney fees, under 42 U.S.C. § 1988, the DPPA, and other applicable laws, and prejudgment interest;

2.      Actual damages, punitive damages, attorneys' fees and other litigation costs and such other preliminary and equitable relief as the court determines to be appropriate under 18 U.S.C. § 2724(b);

3.      Liquidated damages of at least $2,500 for each violation of the DPPA under 18 U.S.C. § 2721(b)(1);

4.      An injunction, permanently enjoining all Defendants from viewing Plaintiff's private information in violation of the DPPA, unless necessary for law enforcement purposes;

5.      An injunction, permanently and prospectively requiring Defendant Commissioner Dohman and any successor to establish and implement all effective monitoring and investigative procedures to end this practice, discover and suspend permanently all accessing privileges to the violators; and to provide full disclosure to all potential claimants of the entities and persons who have violated their rights under the DPPA and the Constitution; and,

6.      For such other and further relief as this Court deems just and equitable.

**SAPIENTIA LAW GROUP PLLC**

Dated:  August 5, 2013

s/ Kenneth H. Fukuda
Kenneth H. Fukuda (#0389301)
Lorenz F. Fett (#196769)
Sonia Miller-Van Oort (#278087)
Mark H. Zitzewitz (#289073)
12 South Sixth Street, Suite 1242
Minneapolis, MN  55402
(612) 756-7100
Fax: 612-756-7101
kennf@sapientialaw.com
larryf@sapientialaw.com
soniamv@sapientialaw.com
markz@sapientialaw.com

***ATTORNEYS FOR PLAINTIFF
BROOK MALLAK***