UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brook Mallak,

        Plaintiff,

    v.

Aitkin County, et al.,

        Defendant.

Court File No. 13-cv-2119 (DWF/LIB)

**ORDER**

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(A), and upon Defendant David Darling's Motion for Protective Order to Quash Subpoena, [Docket No. 367]. The Court held a Hearing on December 5, 2016, and thereafter it took the Motion under advisement. ([Docket No. 374]).

For the reasons discussed below, the Court **GRANTS** Defendant Darling's Motion for Protective Order to Quash Subpoena, [Docket No. 367].

## I.    Background and Statement of Facts

The Driver and Vehicle Services Division ("DVS") of the Minnesota Department of Public Safety ("DPS") maintains a database that contains motor vehicle records of all Minnesota drivers. Myers v. Aitkin Cty., No. 14-cv-473 (JRT/LIB), 2014 WL 7399182, *1 (D. Minn. Dec. 29, 2014). The Minnesota Bureau of Criminal Apprehension ("BCA") maintains a similar database. Under the Driver's Privacy Protection Act ("DPPA"), "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains,

who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a). Rollins v. City of Albert Lea, No. 14-cv-299 (SRN/HB), 2016 WL 6818940, *5 (D. Minn. Nov. 17, 2016).

> The DVS and BCA Databases track when an individual's information is accessed and, upon request, an audit report provides information about these accesses—such as the date and time the access occurred, the agency and specific user accessing the information, and the type of information viewed. Law enforcement using the DVS Database can find an individual in a variety of ways, including by name, driver's license number, or license plate number. Once an officer locates the individual's record within the database, he/she can make further "queries" or select various "tabs" depending on the particular information he/she wishes to view for that individual (e.g., photos, addresses, driving record, motor vehicle information, etc.).

Id.; see also, Karasov v. Caplan Law Firm, P.A., No. 14-cv-1503 (SRN/BRT), 2016 WL 6836930, *4 (D. Minn. Nov. 18, 2016).

On August 5, 2013, as a result of an audit showing accesses to her information in the relevant databases, Plaintiff Brook Mallak filed suit against 10 counties; 10 cities; Tinker & Larson, Inc., a Minnesota corporation with its principal place of business in Mora, Minnesota; Michael Campion and Ramona Dohman, in their individual capacities as Commissioners of the Department of Public Safety; John and Jane Does 1-500, acting in their individual capacities as employees or agents of the named law-enforcement agencies or Tinker & Larson; Department of Public Safety ("DPS") Does 1-30, acting in their individual capacity as employees, independent contractors, or agents of the DPS; and Entity Does 1-50, "including cities, counties, municipalities, and other entities sited in Minnesota and federal departments and agencies." (Compl., [Docket No. 1], 1,4).

Plaintiff alleged that individuals had viewed her private information in violation of the DPPA approximately 190 times between 2003 and 2012. (Id. at 3). Although Plaintiff did not name the individuals whom she alleged impermissibly accessed her private data, she provided in

her Complaint a breakdown of the number of illegal accesses from each city or county and stated her anticipation that she would learn the individuals' identities through discovery. (Id. at 10-12). Plaintiff also alleged that DPS John and Jane Does knowingly provided access to Plaintiff's private data and failed to prevent unauthorized access to the database, and Commissioner Defendants knowingly participated, authorized, or approved of the improper disclosure. (Id. at 13). Plaintiff similarly did not know the names of certain DPS defendants, Supervisor Defendants, or Entity Defendants, but she anticipated that their identities would become known through discovery. (Id. at 19).

In Count I, Plaintiff argued that all defendants violated the DPPA. (Id. at 25-26). In Count II, she asserted a claim under 42 U.S.C. § 1983 that the individual defendants, including John and Jane Does, had violated her rights under the Fourth Amendment to the United States. (Id. at 29-32). Count III alleges a claim that the Entity Defendants (except Tinker & Larson) and the Supervisor Defendants violated 42 U.S.C. § 1983 by knowing of the official custom and practice of illegal access to citizens' private data in violation of the DPPA, yet failing to prevent the accesses. (Id. at 32-35). Count IV alleged that the Commissioner Defendants and DPS Does similarly violated 42 U.S.C. § 1983. (Id. at 36-38). Count V was a § 1983 claim against Defendant DPS Commissioner Dohman based upon an alleged custom and policy of permitting violations of DPPA privacy rights. (Id. at 38-40). Count VI brought a claim of common law invasion of privacy by intrusion upon seclusion against all Defendants. (Id. at 40). Plaintiff sought actual, liquidated, and compensatory damages of over $500,000.00; statutory liquidated damages of $2,500.00 per violation; punitive damages; costs; attorney's fees; and an injunction barring further violation of the DPPA as well as requiring the installation of monitoring and investigative processes to end DPPA violations. (Id. at 41).

In October and November 2013, after Plaintiff filed Stipulations of Dismissal, the district court dismissed her claims against Tinker & Larson and Anoka County. (Stipulation, [Docket No. 79], 1; Dismissal Order, [Docket No. 80]; Stipulation, [Docket No. 85], 1; Dismissal Order, [Docket No. 88], 1).

Many of the remaining named Defendants filed early Motions to Dismiss or for Summary Judgment. ([Docket Nos. 19, 36, 43, 49, 55]). The district court held a hearing on the outstanding dispositive motions on November 8, 2013, and issued a memorandum opinion and order on March 31, 2014, denying in part and granting in part the motions. (Motions Hearing Minute Entry, [Docket No. 87]; Mem. Opinion and Order, [Docket No. 89], 3). The district court first dismissed several of the DPPA claims as barred by the statute of limitations. (Id. at 14-15). Next, the district court dismissed the § 1983 claims which were based on underlying DPPA claims because "the DPPA is a comprehensive remedial scheme that precludes a DPPA-based claim under § 1983." (Id. at 27). The district court also dismissed Plaintiff's § 1983 claims which were based on a right to privacy in her medical information, as well as her claims against Commissioner Defendants and DPS Does, for failure to state claims upon which relief could be granted. (Id. at 30-31, 38-39). Finally, the district court dismissed the invasion of privacy claims, holding that Plaintiff had failed to sufficiently allege a highly offensive intrusion or an intrusion based on a legitimate expectation of privacy. (Id. at 35).

Plaintiff voluntarily dismissed her claims against Crow Wing County Probation employees. (Id. at 39).

On June 30, 2014, the remaining City Defendants (except Minneapolis) filed a Motion for Summary Judgment. ([Docket No. 104]). In July and August 2014, after Stipulations of Dismissal as to claims against the City of Minneapolis, Aitkin County, Morrison County, and

Wright County, the district court entered an order of dismissal with prejudice of Plaintiff's claims against those Defendants. (Stipulation, [Docket No. 125]; Order for Dismissal, [Docket No. 127]; Stipulation, [Docket No. 139]; Order for Dismissal, [Docket No. 141]).

Thereafter, Plaintiff was left with claims based on 2 searches by the City of Baxter, 4 searches by the City of Brainerd, 4 searches by Cass County, 39 searches by Crow Wing County, 1 search by the City of Fridley, 7 searches by the City of Little Falls, and 2 searches by the City of Staples.

On September 16, 2014, Plaintiff filed a Motion to Alter or Amend or Supplement her Complaint to name the Doe Defendants whose identities Plaintiff had learned in discovery. (First Motion to Amend, [Docket No. 142]; Mem. in Supp. of Motion to Amend, [Docket No. 148], 2). This Court held a Motions Hearing on October 3, 2014, and granted the Motion on October 30, 2014. (Order, [Docket No. 166], 1). Plaintiff filed her First Amended Complaint on November 5, 2014, naming 17 additional individual defendants, including David Darling, who brings the Motion presently before this Court. (First Amend. Compl., [Docket No. 167], 1). Defendant Darling is a current St. Cloud Police Department Officer whom Plaintiff alleges illegally accessed her private data once, on July 11, 2010. (Id. at 10, 28).

In February 2015, Plaintiff moved to again amend her First Amended Complaint, wishing to identify additional John and Jane Doe Defendants and to add individual defendants and employer defendants of whom she had not previously been aware. (Second Motion to Amend, [Docket No. 177]; Mem. in Supp. of Second Motion to Amend, [Docket No. 180], 1-2). This Court granted the Motion in part, allowing Plaintiff to amend her Amended Complaint only insofar as she wished "to replace already existing Doe Defendants with now-identified individuals." (Order on Second Motion to Amend, [Docket No. 193], 16). After filing her

Second Amended Complaint, Plaintiff appealed this Court's Order to the district court; the Order was affirmed. (Sec. Amend. Compl., [Docket No. 195]; Appeal, [Docket No. 196]; Order, [Docket No. 212]).

In March 2015, the district court ruled on the remaining City Defendants' Motion for Summary Judgment, granting it in part and denying it in part. (Order on City Defs. Motion for Summ. Judgment, [Docket No. 199], 3). The district court granted summary judgment to Defendants on all of the remaining accesses by employees of the City of Baxter and 3 of the 4 remaining accesses by employees of the City of Brainerd. (Id. at 16-17). In addition, the district court noted that Plaintiff had agreed to dismiss the claims based on accesses by employees of the City of Little Falls. (Id. at 18, n.10). As to the remaining accesses, including the single access by Defendant Darling, however, the district court denied summary judgment because there was a genuine dispute of material fact regarding whether the accesses occurred for a permissible purpose. (Id. at 18). The district court also rejected City Defendants' claim of qualified immunity. (Id. at 13-15). Defendant Darling, among other Defendants, appealed the district court's Order to the Eighth Circuit. (Notice of Appeal, [Docket No. 206]).

On August 15, 2015, Plaintiff filed a Motion to Compel, ([Docket No. 239]), asking this Court to order Defendants to produce certain discovery responses. In response, all remaining Defendants filed Motions to Stay Discovery until the Eighth Circuit ruled on the pending interlocutory appeal. ([Docket Nos. 242, 256, 263]). This Court held a hearing on the cross-Motions on September 3, 2015, and issued an Order on October 13, 2015, denying Plaintiff's Motion to Compel and granting "a stay of discovery by any party concerning Plaintiff's claims against the City Defendants and the Appealing Defendants," but it did not stay all discovery. ([Docket No. 280], 12, 14-15, 18). Because Defendant Darling was an Appealing Defendant,

discovery as to his sole access was stayed pending the resolution of the interlocutory appeal to the Eighth Circuit.

On May 19, 2016, the Eighth Circuit dismissed the appeal for lack of jurisdiction. (8th Cir. Opinion, [Docket No. 330], 4). The mandate issued on June 14, 2016. ([Docket No. 344]). The discovery stay was lifted and an Amended Scheduling Order filed on July 25, 2016, set the close of fact discovery at November 1, 2016. (Amended Scheduling Order, [Docket No. 360], 1-2).

On September 19, 2016, Plaintiff served a subpoena on the DPS, requesting records of Defendant Darling's other accesses in the 24 hours prior to and the 24 hours after Defendant Darling's subject access of Plaintiff's information. (Angolkar Aff., Exh. 3, [Docket No. 371-3]). There was no defense objection raised to this subpoena. DPS produced the requested records on October 18, 2016. (Angolkar Aff., [Docket No. 371], 2; Angolkar Aff., Exh. 4, [Docket No. 371-4], 2).

On October 21, 2016, Plaintiff served upon the DPS a second subpoena duces tecum demanding:

> For the month of July 2010 only, an audit of all "photo only" DVS queries by St. Cloud officer David Darling, as similarly noted and referenced in the attached 2/8/11 letter from DPS to Chief Dennis Ballantine at Exhibit B to this subpoena. This audit requested is to include the date and time of the accesses, the IP address utilized by Darling, what information Defendant Darling obtained, including the name of the individuals whose data was accessed, and the "EsupportPath" used to retrieve the information.

(Angolkar Aff., Exh. 6, [Docket No. 371-6], 3-7).

On November 21, 2016, Defendant Darling filed the present Motion for Protective Order to Quash Subpoena. ([Docket No. 367]). Defendant Darling also filed a Memorandum and Affidavit from his counsel in support of his Motion. ([Docket Nos. 370-371]).

Plaintiff chose not to file a response to the Motion.[1] (Dec. 5, 2016, Motions Hearing, Digital Record, 1:44-45). This Court held a Motions Hearing on December 5, 2016, at which counsel for Plaintiff and for Defendant Darling were present, and Defendant Darling's counsel informed the Court that DPS has not yet responded to the subpoena. (Minute Entry, [Docket No. 374]; Dec. 5, 2016, Motions Hearing, Digital Record, 1:39-40).

## II.      Standards of Review

Federal Rule of Civil Procedure 26(b)(1) provides:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts generally have construed Rule 26(b)(1) broadly. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); see also, Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant"). Rule 26(b) is construed to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." In re Milk Prod. Antitrust Litig., 84 F. Supp. 2d 1016, 1017 (D. Minn. 1997) (quoting Oppenheimer, 437 U.S. at 351).

However, "'even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is

---

[1] At the December 5, 2016, Motions Hearing, Plaintiff's counsel informed this Court that Plaintiff had not filed a response to Defendant Darling's Motion because counsel believed that the Motion was illogical and responding to it would be a waste of resources. (Dec. 5, 2016, Motions Hearing, Digital Record, 1:44-45). This Court reminded Plaintiff's counsel that such a decision runs the risk of waiving the opportunity to argue in opposition to the Motion at the Motions Hearing, see Local Rule 7.1(b) and (g). (Id. at 1:34-36). Although the Court allowed Plaintiff's counsel to present argument at the hearing, the Court reserved the question of whether to consider that argument when ruling on the Motion. (Id.). After careful consideration, the Court exercises its discretion and considers Plaintiff's arguments here, largely because doing so does not affect the outcome of the issue.

sought outweighs the need of the person seeking discovery of the information.'" <u>Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2</u>, 197 F.3d 922, 925 (8th Cir. 1999) (quoting <u>Micro Motion, Inc. v. Kane Steel Co.</u>, 894 F.2d 1318, 1323 (Fed. Cir. 1990) (emphasis omitted)). "The party resisting production bears the burden of establishing lack of relevancy or undue burden." <u>St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.</u>, 198 F.R.D. 508, 511 (D. N.D. Iowa 2000) (citations omitted).

Under Rule 26(c)(1), a party "may move for a protective order in the court where the action is pending" and "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Such an order may, as Defendant Darling requests here, "forbid[] the disclosure or discovery." <u>See</u>, Rule 26(c)(1)(A).

Rule 45 governs quashing subpoenas and states:

(A) On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
(B) To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

### III. Defendant Darling's Motion for Protective Order to Quash Subpoena, [Docket No. 367]

## A. Standing

Before this Court can decide whether to grant Defendant Darling's Motion, it must first determine whether Defendant Darling even has standing to challenge a subpoena served on DPS, a nonparty.

Defendant Darling entitled the Motion currently at issue as a "Motion for Protective Order to Quash Subpoena," and requested "a protective order to quash the subpoena for July 2010 photograph accesses pursuant to Fed. R. Civ. P. 26." (Motion, [Docket No. 367]). At the December 5, 2016, Motions Hearing, Defendant Darling's counsel explicitly asked this Court to grant the "motion to quash." (Dec. 5, 2016, Motions Hearing, Digital Record, 1:44-45).

Despite Defendant Darling's mixed choice of language, a protective order and an order quashing a subpoena are discrete legal orders. The confusion is understandable, as many cases within this Circuit have treated motions for such orders interchangeably. See, United States v. McDougal, 559 F.3d 837, 839 (8th Cir. 2009) (stating that the defendant "filed a motion to quash the grand jury subpoena or in the alternative for a protective order [and] the district court denied the motion to quash"); Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 729 (8th Cir. 2002) (stating that the plaintiffs "filed a motion seeking a protective order, pursuant to Fed. R. Civ. P. 26(c), . . . [and t]he magistrate judge denied the motion to quash"); but see, Imageware, Inc. v. U.S. W. Commc'ns, 219 F.3d 793, 794 (8th Cir. 2000) (stating that the defendant "filed a motion to quash the subpoenas, and for the entry of a protective order" and "the motion to quash was denied, but a protective order was entered").

Motions seeking protective orders and motions to quash subpoenas are governed by separate Federal Rules of Civil Procedure. Rule 26(c) addresses protective orders, while Rule 45 addresses orders quashing subpoenas. In addition, at least one district court within this District

has held that motions to quash and motions for protective orders have different standing requirements; an important consideration for the case now before this Court.

In Shukh v. Seagate Technology, LLC, 295 F.R.D. 228, 231 (D. Minn. 2013), Alexander Shukh sued his former employer, Seagate Technology, LLC, alleging multiple claims arising out of his employment and ultimate termination. After the parties served their expert reports, Shukh served subpoenas on Seagate's experts and on nonparties, seeking information about Seagate's experts' backgrounds and their expert opinions in prior, unrelated cases. Id. at 232-34. Seagate moved for a protective order with respect to five of the subpoenas, including three subpoenas to nonparties, arguing that the information "sought was irrelevant and imposed an undue burden on the parties to whom the subpoenas were served." Id. at 234. The magistrate judge held a hearing, after which he granted the motion in part and required Shukh to withdraw the subpoenas. Id.

Shukh objected to the magistrate judge's order, arguing in relevant part that Seagate did not have standing to challenge the subpoenas, either through a motion to quash, as Shukh characterized Seagate's motion, or through a motion for a protective order. Id. at 235. The district court first held that under Rule 45, which governs orders quashing subpoenas, Seagate did not have standing to move to quash the subpoena because Seagate was not the party that received the subpoena. Id. at 235-36. The district court continued:

> But Seagate did not bring a motion to quash; instead it sought a protective order pursuant to Rules 16 and 26. Rule 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). The Rule also provides the Court with the authority to issue "for good cause . . . an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The explicit mention of 'a party' in the rule has been interpreted to provide standing for a party to contest discovery sought from third-parties."

Id. at 236 (citations omitted).

After affirming the magistrate judge's determination that Seagate had standing to bring the motion for a protective order, the district court further explained:

> Although the relief obtained by Seagate in its motion for a protective order is similar to the relief that could have been obtained by the individuals and entities named in the subpoenas had they brought motions to quash under Rule 45, courts have recognized an important distinction between requests to quash a subpoena and motions for protective orders requesting the court to control discovery more generally under Rules 16 and 26.The mere fact that subpoenas are the type of discovery at issue here does not limit parties and the court to the relief provided for in Rule 45. Instead, subpoenas issued under Rule 45 are subject to the same "constraints that apply to all of the other methods of formal discovery." Rule 26, for example, provides the constraint that discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense." . . . Where a party, such as Seagate, contends that subpoena requests are irrelevant, cumulative, and burdensome, they are not simply asserting the rights of the third party, but their own right to reasonable discovery and efficient disposition of the case. Furthermore, unlike undue burden, which is a fact potentially best known to the party receiving the subpoena, Seagate, as a party to the present litigation, is the only entity as between itself and third parties with the appropriate knowledge to assert an objection based on relevance or cumulative discovery. Therefore, where a party does not seek to quash a subpoena under Rule 45(c) "the issue is not of privity between a party and the subpoenaed third-person, but is one of case management under Rules 16 and 26."

Id. (citations omitted). Accordingly, the district court held that the magistrate judge had not erred in concluding that Seagate had standing to bring the motion for a protective order.

Returning to the case presently before this Court, although the title of Defendant Darling's Motion conflates a motion for a protective order with a motion to quash a subpoena, when this Court considers the Motion's substance, it is clear that Defendant Darling seeks a protective order pursuant to Rule 26(c)(1). (See, Mem. in Supp., [Docket No. 370]). In addition to the fact that a protective order is the remedy Defendant Darling specifically identifies and requests, his arguments are based upon relevance and proportionality, both of which are considerations under Rule 26, not Rule 45. As in Shukh, the issues Defendant Darling raises are those of case management, not privity between Defendant Darling and the DPS. Moreover, the

<u>Shukh</u> district court's point that the plain language of Rule 26 and other courts' interpretations of the Rule support a finding that any "party" may move for a protective order, even in response to a subpoena served on a nonparty, is well taken.

This Court is cognizant of the fact, however, that not all courts read Rule 26 as broadly. Many other courts have held that a party lacks standing to prevent disclosure of information by a non-party in response to a third-party subpoena, either through a motion to quash or a motion for a protective order, unless the challenging party has some personal right or privilege as to the information being sought through the subpoena. <u>See</u>, <u>Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.</u>, No. 07-cv-27 (PJS/RLE), 2007 WL 1544572, *3 (D. Minn. May 23, 2007) ("Several Courts have concluded that a party does not have standing to file a Motion for a Protective Order, so as to prevent the disclosure of information by a non-party in response to a Third Party Subpoena" but "those Courts have clarified that 'a party may raise objections in situations where the party claims some personal right or privilege relating to the documents sought.'"). <u>See</u> also, <u>Boaz v. FE Express, LLC</u>, No. 15-CV-1271 CAS, 2016 WL 2733121, *2 (D. E.D. Mo. May 11, 2016) (denying motion to quash because the moving party "lacks standing to challenge the Rule 45 subpoenas plaintiff issued to the third parties, as it does not assert any personal right or privilege with respect to the documents requested in the subpoenas"); <u>Knapp v. Novartis Consumer Health, Inc.</u>, No. 14CV3007, 2014 WL 7082089, *2 (D. Neb. Dec. 12, 2014) ("'A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter.'"); <u>Barker v. Local 150, Int'l Union of Operating Eng'rs, AFL-CIO</u>, No. 08 C 50015, 2010 WL 934068, *3 (D. N.D. Ill. March 11, 2010) (applying same principle to a motion to quash in a DPPA case).

With regards to his personal right to the information sought through the subpoena to DPS, Defendant Darling also contends that the information Plaintiff seeks is his personal, private data under the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. Ann. § 13.01, et seq.[2] (Mem. in Supp., [Docket No. 370], 1; Dec. 5, 2016, Motions Hearing, Digital Record, 1:35-37). "The purpose of the MGDPA is to reconcile the rights of data subjects to protect personal information from indiscriminate disclosure with the right of the public to know what the government is doing." KSTP-TV v. Ramsey Cty., 806 N.W. 2d 785, 788 (Minn. 2011).

Specifically, Defendant Darling argues that the information sought is protected under Minn. Stat. Ann. § 13.15 as the private data of Defendant Darling. (Dec. 5, 2016, Motions Hearing, Digital Record, 1:35-37). That statute provides:

> (a) "Electronic access data" means data created, collected, or maintained about a person's access to a government entity's computer for the purpose of:
> (1) gaining access to data or information;
> (2) transferring data or information; or
> (3) using government services.
> . . .
> **Subd. 2.** Electronic access data are private data on individuals or nonpublic data.

Minn. Stat. Ann. § 13.15.

This Court's independent research has found no case law, federal or state, that interprets this (relatively new) statutory provision, nor, in fact, any case from any jurisdiction that considers whether records of accesses to a database like the DVS or BCA database by a police officer are the officer's private data to the extent that he or she has standing to object to a

[2] Although this Court recognizes that the Federal Rules of Civil Procedure, not the MGDPA, control discovery issues in a federal lawsuit, see, Scheffler v. Molin, No. 11-cv-3279 (JNE/JJK), 2012 WL 3292894, *4 (D. Minn. Aug. 10, 2012), the analysis of whether the information sought is protected under the MGDPA is nonetheless pertinent. If the information is Defendant Darling's private data under the MGDPA, that is strong support for the conclusion that Defendant Darling has the requisite interest in the information to create standing to bring the current Motion for a Protective Order even if construed as a motion to quash a subpoena. Whether the information is protected by the MGDPA does not, however, dictate whether application of the Federal Rules of Civil Procedure requires granting the motion.

subpoena seeking those records served upon the entity that manages the electronic access data. Nevertheless, "[w]hether interpreting federal or state law, a federal court's analysis of a statute must begin with the plain language." In re M & S Grading, Inc., 457 F.3d 898, 901 (8th Cir. 2006).

The information Plaintiff seeks through the subpoena presently at issue is "data created, collected, or maintained about [Defendant Darling's] access to a government entity's computer for the purpose of . . . gaining access to data or information." See, Minn. Stat. Ann. § 13.15, Subd. 1. Thus, it is "electronic access data" as defined by the MGDPA and, as such, is within the definition of private, nonpublic data on Defendant Darling. See, Minn. Stat. Ann. § 13.15, Subd. 2. "Private data," is "(a) not public; and (b) accessible to the individual subject of those data." See, Id., at Subd. 12; Minn. Stat. Ann. § 13.15, Subd. 2. Moreover, the information sought fits squarely within the MGDPA's definition of "data on individuals," as it is "data in which any individual is or can be identified as the subject of that data . . . ." Minn. Stat. Ann. § 13.02, Subd. 5.

Based on the plain language of the MDGPA, the Court finds that "electronic access information," as defined in Minn. Stat. Ann. § 13.15, includes information retained by the DPS which identifies photo queries run in the DVS database by a specific, identifiable police officer. Therefore, under Subdivision 2 of the statute, the information Plaintiff seeks from DPS through the subpoena currently before this Court is private data on Defendant Darling and, as such, is data to which Defendant Darling has a personal right or privilege.[3]

---

[3] Unlike information received in the initial audit which prompted the current litigation, the information sought through the subpoena currently in contention is information specific to Defendant Darling's accesses, not general information as to how many times and by which entity Plaintiff's information was accessed. As the subject of the accesses, Plaintiff has a right under the MGDPA to the latter information, but any right to access the former information belongs (with some statutory exceptions) to the subject of that information: Defendant Darling.

Accordingly, whether under Rule 26(c) as a "party" or under Rule 45 because Defendant has a personal interest in the information subpoenaed from a non-party, the Court may here consider Defendant's assertions of irrelevance and disproportionality under Rule 26 and his request for a protective order regarding data in which he has a personal interest. This Court holds that Defendant Darling has standing to bring the present Motion for Protective Order to Quash Subpoena, [Docket No. 367].

### B. Merits of the Motion

As stated above, under Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In addition, "'a showing of irrelevancy of proposed discovery can satisfy the "good cause" requirement of Rule 26(c).'" <u>Shukh</u>, 295 F.R.D. at 237 (quoting <u>Smith v. Dowson</u>, 158 F.R.D. 138, 140 (D. Minn. 1994)). As the United States Supreme Court has recognized, "Rule 26 . . . must be viewed in its entirety" and the liberality and broad scope of Rule 26(b)(1) necessarily empowers a district court to exercise its discretion to issue protective orders under Rule 26(c). <u>See</u>, <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 34-35 (1984).

> As stated by Judge Friendly in <u>International Products Corp. v. Koons</u>, 325 F.2d 403, 407-08 ([2d Cir.] 1963), "[w]hether or not the Rule itself authorizes [a particular protective order] . . . we have no question as to the court's jurisdiction to do this under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.'" (citing <u>Gumbel v. Pitkin</u>, [124 U.S. 131, 144 (1888)]). The prevention of the abuse that can attend the coerced production of information . . . is sufficient justification for the authorization of protective orders.

<u>Id.</u> at 35-36.

---

Moreover, this Court is <u>not</u> today holding that the MGDPA authorizes Defendant Darling to <u>prevent</u> DPS from releasing the information under the appropriate circumstances. The Court finds <u>only</u> that under the facts of this case, Defendant Darling has a personal interest in the data sufficient to provide standing for him to challenge a subpoena to DPS seeking the data.

Part of this Court's role in preventing abuse of the discovery process involves adhering to Rule 26(b)'s requirement that only relevant material is discoverable. See, Honeywell Int'l Inc. v. ICM Controls Corp., No. 11-cv-569 (JNE/TNL), 2013 WL 6169671, *11 (D. Minn. Nov. 22, 2013) (beginning consideration of a motion for a protective order "with the most basic inquiry: whether the information sought by Honeywell is relevant under Rule 26(b)(1)"). As the party seeking the order, Defendant Darling bears the burden of establishing good cause for the order. See, Northbrook Dig., LLC v. Vendio Servs., Inc., 625 F. Supp. 2d 728, 734 (D. Minn. 2008). First, Defendant Darling contends that the information sought is irrelevant to the claim against him in this case.

At all times in this case, only one access involving Plaintiff by Defendant Darling has been at issue: the access which occurred on July 11, 2010. (See, Compl., [Docket No. 1], 3, 49; First Amend. Compl., [Docket No. 167], 28, 67). At the December 5, 2016, Motions Hearing, Plaintiff argued that the information sought in the subpoena—records detailing other non-Plaintiff-related photo queries Defendant Darling entered into the DPS database during the entire month of July 2010—would provide information relevant to the propriety of Defendant Darling's July 11, 2010, access. (Motions Hearing, Digital Record, 1:49-50). Specifically, Plaintiff asserted that the other photo query records would provide relevant information and "circumstantial evidence that would demonstrate that there is a suspicious access pattern in July that further buttresses [Plaintiff's] case." (December 5, 2016, Motions Hearing, Digital Record, 1:49-50). Plaintiff further argued that the information sought was highly relevant as to whether Defendant Darling was abusing the database. (Id. at 1:53-54).[4]

---

[4] In addition, at the Motions Hearing, Plaintiff asked the Court to receive into evidence a letter that Plaintiff asserted would "explain why it's highly relevant that [Plaintiff] would ask for accesses for the month of July 2010." (Dec. 5, 2016, Motions Hearing, Digital Record, 1:45-46; 1:57-58). The letter Plaintiff offered was an unredacted version of

The Court disagrees.

Information as to additional non-Plaintiff-related accesses of DVS data by Defendant Darling during the entire month of July 2010, would have little to no bearing on whether the single access by Defendant Darling of Plaintiff's data at issue in this case violated the DPPA. The information sought by the subpoena would merely catalog Defendant Darling's photo queries; it would <u>not</u> indicate whether any of those photo queries were themselves permissible or impermissible under the DPPA because it would not provide context for the photo queries. In order to obtain the context needed to determine whether other photo queries throughout the month of July 2010, revealed through the subpoena at issue were permissible under the DPPA, Plaintiff would have to engage in additional case-within-a-case investigation and discovery, which would be <u>untimely</u>, as fact discovery closed on November 1, 2016, (<u>see</u>, Amended Sched. Order, [Docket No. 360], 2); the subpoena at issue was not even served until 10 days before the close of discovery. (<u>Id.</u>).

At the December 5, 2016, Motions Hearing, Plaintiff also asserted that the additional photo queries could possibly be relevant to the propriety of the single access of Plaintiff's data at issue in this case because, under relevant case law from this District and the Eighth Circuit, a high volume of accesses equals a suspicious access pattern. (Dec. 5, 2016, Motions Hearing, Digital Record, 1:54-55). In support of this argument, Plaintiff cited to <u>Karasov v. Caplan Law</u>

---

a February 8, 2011, letter submitted by Defendant Darling in redacted form as an exhibit to the Affidavit in Support of his Motion for Protective Order. (<u>See</u>, Angolkar Aff., Exh. 6, [Docket No. 371-6], 7-8). Plaintiff asserted that the unredacted version of the letter would show that audits of Defendant Darling's DPS database usage subsequent to the access at issue in the present case revealed a suspicious pattern of accesses. (Dec. 5, 2016, Motions Hearing, Digital Record, 1:45-46; 1:57-58). This Court declined to accept the letter in light of Plaintiff's decision not to respond in any written form to Defendant Darling's Motion, since Plaintiff could have submitted evidence in conjunction with a response properly submitted under Local Rule 7.1. (<u>Id.</u> at 1:59-60).

Firm, P.A., 84 F. Supp. 3d 886 (D. Minn. 2015), and Rollins v. City of Albert Lea, 79 F. Supp. 3d 946 (D. Minn. 2014). (Id.).

The Court disagrees with Plaintiff's characterization of the foregoing case law because both cases Plaintiff cites are easily distinguishable.

Karasov and Rollins presented motions to dismiss under Rule 12(b)(6). Karasov, 84 F. Supp. 3d at 893; Rollins, 79 F. Supp. 3d at 953-54. Defeating such motions requires only a showing that the complaint "contain[s] facts with enough specificity 'to raise a right to relief above the speculative level.'" Rollins, 79 F. Supp. 3d at 967-68 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The case presently before this Court, on the other hand, is procedurally well past the point of examining sufficiency of the Complaint under Rule 12(b)(6).

In addition, contrary to Plaintiff's characterization, both Rollins and Karasov actually reject the proposition that sheer volume of all, general accesses alone is enough to prove an impermissible purpose behind any specific access. See, Karasov, 84 F. Supp. 3d at 899 ("[T]he 'volume of lookups alone is insufficient to allow a plaintiff to state a claim.'"); Rollins, 79 F. Supp. 3d at 968 (acknowledging the same). To the extent that Karasov recognized that the volume of lookups "can be relevant factual support for a claim," 84 F. Supp. 3d at 899, the Karasov court was referring to the number of lookups of the personal information specifically of the plaintiff at issue in that case.

Similarly, in McDonough v. Anoka Cty., 799 F.3d 931, 947 (8th Cir. 2015), the Eighth Circuit recognized that suspicious access patterns and timing of accesses could, under certain circumstances, provide sufficient support to defeat a 12(b)(6) motion. Like the district courts in Rollins and Karasov, however, the Eighth Circuit in McDonough was referring to specific accesses of a particular person's information, not the number of overall accesses in general. See,

McDonough, 799 F.3d at 947 ("For example, a suspicious access pattern occurs when Law Enforcement Does access a Driver's information on the same day or within the span of a few hours through multiple, unrelated agencies.").

Here, Plaintiff argues that the overall, general number of times Defendant Darling accessed any person's personal information throughout the month of July 2010, is relevant to whether or not his purpose in accessing Plaintiff's specific information a single time on July 11, 2010, was permissible under the DPPA. Current case law does do not support this position, and this Court declines to adopt it. Accordingly, without any context, which could not be gleaned solely from the information Plaintiff seeks in the subpoena presently at issue, the number of general times Defendant Darling submitted a photo query to the DPS database during the entire month of July 2010, is irrelevant to determining the particular purpose of the single access of Plaintiff's data by Defendant Darling which is at issue in the present case.

Finally, the Court cannot overlook the eleventh-hour nature of Plaintiff's current subpoena. To the extent that Plaintiff argued at the December 5, 2016, Motions Hearing that the information now sought may provide additional relevant information, Plaintiff concedes she has already gained from DPS information about Defendant Darling's other, general accesses for the 24 hours immediately before and immediately after the access of Plaintiff's data at issue in this case; which information was previously received and was available for use at Defendant Darling's deposition in early October 2016. (Dec. 5, 2016, Motions Hearing, Digital Record, 1:43-44, 1:55-56). Plaintiff has failed to offer any explanation why, in the exercise of due diligence, she was therefore unable to serve the broader subpoena now at issue on DPS until a mere 10 days prior to the November 1, 2016, close of fact discovery.

In summary, this Court holds that Defendant Darling has standing to bring his "Motion for Protective Order to Quash Subpoena" to challenge the October 21, 2016, subpoena Plaintiff served on non-party DPS. And, because the information Plaintiff seeks is irrelevant to the issues in the present case, this Court grants Defendant Darling's Motion.

**IV.     Conclusion**

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED:**

1.  That Defendant Darling's Motion for Protective Order to Quash Subpoena, [Docket No. 367], is **GRANTED**.

Dated: December 22, 2016                            s/Leo I. Brisbois
                                                    Leo I. Brisbois
                                                    U.S. MAGISTRATE JUDGE